562 So.2d 370 (1990)
Vance Anthony YOUNG, Appellant,
v.
The STATE of Florida, Appellee.
No. 88-585.
District Court of Appeal of Florida, Third District.
May 22, 1990.
Paul Morris, Coral Gables, Carl H. Lida, Miami, for appellant.
Robert A. Butterworth, Atty. Gen., and Richard L. Polin, Asst. Atty. Gen., for appellee.
Before NESBITT, BASKIN and COPE, JJ.
PER CURIAM.
Defendant Young was convicted of four counts of sexual battery, three by using or threatening to use a knife and one by inserting a car key into the victim's vagina. He seeks to overturn the convictions on the ground that the trial court refused to allow testimony concerning the victim's prior sexual activities. The Rape Shield Law, Chapter 794, Florida Statutes (1987), precludes such testimony unless it tends "to establish a pattern of conduct or behavior on the part of the victim which is so similar to the conduct or behavior in the case that it is relevant to the issue of consent." § 794.022(2), Fla. Stat. (1987). We hold that the proffered statements did not demonstrate the necessary pattern, and *371 thus, the trial court correctly excluded the testimony.[1]
The pattern of conduct Young cites is predicated on the fact that the victim had engaged in sexual intercourse with three members of a group of friends; he maintains that her conduct demonstrated a "pattern" that supported his defense that the victim consented, lied, or seduced him. We find no merit in his argument.
Florida courts have agreed that past encounters do not shed light on whether a victim consented to engage in sex with the defendant, unless a distinctive pattern of similar behavior is shown. The exception provided in the Rape Shield Law applies only when the victim's behavior is so similar to the defendant's version of the encounter that it indicates probable consent to the acts charged. The victim's prior dating experiences or moral values are otherwise irrelevant. Kaplan v. State, 451 So.2d 1386 (Fla. 4th DCA 1984); McElveen v. State, 415 So.2d 746 (Fla. 1st DCA 1982); Hodges v. State, 386 So.2d 888 (Fla. 1st DCA 1980); see also Roberts v. State, 510 So.2d 885 (Fla. 1987), cert. denied, 485 U.S. 943, 108 S.Ct. 1123, 99 L.Ed.2d 284 (1988). In Hodges, for example, the court declined to find a pattern of conduct in a prior encounter stating:
Evidence merely disclosing prior sexual activity or looseness of morals in that regard is not admissible under the statute. In order to be admissible, the evidence must be of such a nature as to give rise to a reasonable assumption that because the victim engaged in a certain disclosed pattern of conduct or behavior, the victim probably consented to the same activity with the accused. [Emphasis supplied].
Hodges v. State, 386 So.2d at 889. Refining the definition further, the Kaplan court explained:
Moreover, the pattern must be so distinctive and so closely resemble the defendant's version of the encounter that it tends to prove that the complainant consented to the acts charged or behaved in such a manner as to lead the defendant reasonably to believe that the complainant consented. Cf. State v. Wilhite, 58 N.C. App. 654, 294 S.E.2d 396 (1982), cert. denied, 307 N.C. 129, 297 S.E.2d 403 (1982), remanded for resentencing, 308 N.C. 798, 303 S.E.2d 788 (1983). Only when these statutory requirements are met does the probative value of the evidence outweigh its prejudicial impact.
Kaplan v. State, 451 So.2d at 1386. In the absence of such a pattern, the testimony is nothing more than character assassination, irrelevant to the issue of consent.
Applying these principles to the facts in the case under consideration, we conclude that the trial court correctly found that no pattern existed. The pattern of conduct Young cites stems from the victim's consensual intercourse with three members of Young's group of friends, two of whom she allegedly knew already had girlfriends. The proffered "pattern" is that the victim consented to intercourse with Young, and that he, too, had a girlfriend. The record fails to support Young's assertion that such a pattern existed.[2]
Consensual sexual intercourse with three members of a group of ten to twenty males is not evidence that the victim agreed to engage in intercourse with other members, especially when the record does not disclose who initiated the prior consensual sexual encounters. The men involved stated that the victim flirted with them and engaged in suggestive behavior, but that intercourse in all three cases was a mutual decision, in contrast to the circumstances here. The timing of each of the victim's *372 consensual encounters also fails to demonstrate a pattern: the victim engaged in consensual intercourse on the first encounter with only one of the young men, but not until the second and fourth meetings with the other two young men.
Another fact contradicting the existence of a "pattern" is that all three of the young men with whom the victim engaged in consensual intercourse testified that their encounters with the victim were "normal" and not "kinky." Unlike the victim's prior sexual encounters, in which there was no evidence of force, torn clothing, or physical injuries, the encounter with Young involved violence. He allegedly raped the victim during their first encounter, held her down, ripped her outergarments and both layers of her undergarments, burned her on the chest and thigh with a cigarette, bit her left breast, inserted a car key into her vagina, and bruised her entire body.[3] Even if the victim is found to have consented to "the same activity" with Young that she had engaged in with the other men in the group, there is no evidence that she consented to violence or physical abuse in any encounter. Consequently, no pattern exists to justify the admission of the excluded testimony.
If, however, the court is held to have erred in excluding the testimony, the error is harmless. State v. DiGuilio, 491 So.2d 1129 (Fla. 1986). The physical evidence overwhelmingly supports the jury's verdict, and thus, there is no possibility that the error contributed to the verdict.
Were the court to admit prior sexual acts of a victim in the absence of the pattern of similar conduct enunciated in the Rape Shield Law, it would revive the view that a woman with sexual experience cannot have been the victim of rape because, having consented in the past, she will always consent in the future. That reasoning would allow a defendant to avoid conviction merely by showing that the victim has some sexual experience. An enlightened legislature has declared that sort of evidence irrelevant and unfairly prejudicial in sexual battery cases.
The trial court correctly applied the Rape Shield Law and properly excluded testimony about the victim's previous sexual encounters. For these reasons, we affirm the convictions.
Appellant's remaining point lacks merit.
Affirmed.
NOTES
[1] The court conducted an in camera proceeding in order to decide whether the statements were admissible.
[2] The record demonstrates that, prior to intercourse, Ted Young, defendant's brother, never told the victim he had a girlfriend, and did not know if anyone else did. The first mention of Ted's girlfriend occurred after Ted and the victim engaged in intercourse. Additionally, although Michael M. had a girlfriend, he testified that he would have left her for the victim had the victim sexually outperformed his girlfriend. Thus, the evidence fails to support the conclusion that the victim's consensual sexual encounters occurred only with partners she knew had girlfriends.
[3] The doctor and investigating officer testified that they observed the injuries on her body.